UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RACHEL HENDERSON,

                Plaintiff,

   -against-                                       1:19-CV-0866 (LEK/CFH)

GREENVILLE CENTRAL
SCHOOL DISTRICT, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Rachel Henderson commenced the present action against defendants Greenville Central School District (the "School District"), Greenville Board of Education, board members Thomas Connolly, Jennifer Howard, Patricia Macko, Duncan MacPherson, Michael McAneny, Tracy Young, Raymond Albin, and Superintendent Tammy J. Sutherland alleging civil rights violations under 42 U.S.C. § 1983 and Article I, Section 8 of the New York State Constitution. Dkt. No. 29 ("Amended Complaint"). Presently before the Court are Plaintiff's motion for summary judgment, Dkt. No. 42 ("Plaintiff's Motion"), and Defendants' motion for summary judgment, Dkt. No. 48 ("Defendants' Motion"). For the following reasons, the Court grants Defendants' Motion, denies Plaintiff's Motion, and dismisses the Amended Complaint.

### II. BACKGROUND

#### A. Factual History

The following facts are undisputed, except where otherwise noted.

Plaintiff began her employment with the School District in February 2011. Dkt. No. 42-35 ("Plaintiff's Statement of Material Facts" or "Plaintiff's SMF") ¶ 9. Throughout her tenure, except for one instance of discipline in 2016, Plaintiff received almost all "outstanding" or "satisfactory" employment performance ratings. Id. ¶ 14. Relevant to this case, for the 2018-19 academic year, Plaintiff was employed as an aide/monitor in the Scott M. Ellis Elementary School. Id. ¶ 1.

Plaintiff is the mother of three School District students, including one who was a freshman at Greenville High School (the "High School") during the 2018-19 academic year. Id. ¶¶ 21–22. On September 20, 2018, Plaintiff and her husband planned to attend an open house hosted by the School District. Id. ¶¶ 26, 29. Plaintiff was not asked to work at the open house. Id. ¶ 28. On the day of the open house, Plaintiff learned from her husband that there may be a dangerous student at the High School. Dkt. No. 45-2 ("Defendants' Statement of Additional Material Facts" or "Defendants' SMF") ¶ 40. Plaintiff's husband heard this information from Mark Vardy, a friend and former coworker, who in turn heard the information from his wife. Id. ¶ 98; Pl.'s SMF ¶ 31.[1] At the last minute, Plaintiff's husband was called into work and did not attend the open house with his wife. Id. ¶ 30. Although he did not attend the open house, he asked Plaintiff to find out if the student was actually going to attend the School District. Id. ¶ 36. Plaintiff was concerned in particular that the student could be in physical education ("PE") classes and lunch with her small, 14-year-old son. Id. ¶¶ 40–41. "Those are typically the classes[,]" according to Plaintiff, "that can be physical because there's a whole bunch of kids in

---

[1] It is not clear if Defendants dispute Pl.'s SMF ¶ 31, Dkt. No. 45-1 at ¶ 31, for the assertion that Mark Vardy is a friend and former colleague of Plaintiff's husband, and that Vardy heard the information from his wife. In any case, this is not a genuine issue of material fact.

2

one room." Id. ¶ 40 (quoting Dkt. No. 42-6 ("Henderson Deposition") at 72:18–20). Plaintiff's concern was the alleged potential for resulting physical harm to her child. Id.

First, Plaintiff went to where the PE and health teachers were stationed and spoke directly to Gordon Conrow, a former coworker and her son's PE teacher. Id. ¶¶ 47–48. After exchanging pleasantries, Plaintiff asked:

> "Do you know anybody by the name of [the student]?" . . . "I have a concern that my husband wanted me to ask. Apparently the kid spent some time in jail and he could be dangerous, and I just want to check and make sure that he's not near my kids."

Henderson Dep. at 21:24–22:5.

Conrow did not know the student, and he called over Christopher Warga, another PE teacher who was standing nearby. Id. at 22:11–23:22. Warga also did not know the student. Pl.'s SMF ¶ 53. According to Plaintiff:

> So they called over another gentleman and he introduced himself to me and I told him my concerns and he actually gave me the child's first name and he said that he was an aide with this child and not to worry, that he's with him at all times whenever he is out of the classroom. And he also told me that he has his own PE class.

Henderson Dep. at 24:13–24:19.

Hearing this information made Plaintiff feel better, but since she did not know the man, she wanted to get some advice from someone she did know. Pl.'s SMF ¶ 56. The next day, September 21, 2018, after dismissal, Plaintiff approached her colleague, aide/monitor Laura Mastrantuono, in the High School parking lot. Id. ¶ 57. Plaintiff asked whether Mastrantuono knew the student and whether he was a "good kid." Henderson Dep. at 35:11–36:15. Defendants

assert that Plaintiff made inappropriate statements about the student. Defs.' SMF ¶ 92. Mastrantuono's response satisfied Plaintiff's concerns. Pl.'s SMF ¶ 60.

After these events, Conrow told principal Matt Ward that Plaintiff was "asking about another kid[.]" Id. ¶ 62. The student's aide emailed Brook Van Fleet, the director of special education and pupil personnel services, the morning after the open house about the "parent interaction" with Plaintiff. Id. ¶ 64. Mastrantuono also emailed Van Fleet about her interaction with Plaintiff. Id. ¶¶ 65–66. Van Fleet, in turn, forwarded these emails to Sutherland and assistant superintendent Accousti. Id. ¶¶ 4–5, 67.

On or about September 25, 2018, Plaintiff received a letter from Accousti, requesting her attendance at a meeting scheduled for September 27, 2018. Id. ¶ 71. The meeting was rescheduled for September 28, and Plaintiff met with Accousti and Karen Overbaugh, the president of the Greenville Paraprofessional Federation. Id. ¶¶ 74–75. Accousti told Plaintiff that the School District wanted to terminate her employment. Id. ¶ 78. Plaintiff was given until October 2, 2018 to decide whether to resign or be terminated, and she was told not to report for work the following Monday, October 1, 2018. Id. ¶¶ 79–80.

On September 30, 2018, as a follow-up to the September 28 meeting, Plaintiff sent a letter to Accousti and copied a number of other individuals. Id. ¶ 83; Dkt. No. 42-24 ("September 30 Letter"). In the September 30 Letter, among other things, Plaintiff wrote that she felt she "was mistreated and wrongly accused pertaining to [her] right and [her] parental responsibility to protect [her] son." Id. at 1. She also wrote that the information about the allegedly dangerous student "caused [her] to have a 'normal parental response' that made [her] fearful for the safety and well being of [her] son in attendance at the [H]igh School." Id.

4

On October 4, 2018, Sutherland sent Plaintiff a letter in response to the September 30 Letter. Dkt. No. 42-27. The letter notified Plaintiff that her employment with the School District was terminated effective immediately. Id. at 2. Then, on October 15, 2018, the Board of Education voted to approve Plaintiff's termination retroactively. Defs.' SMF ¶ 132.

### B. Procedural History

Plaintiff commenced this case on July 18, 2019. Dkt. No. 1 ("Complaint"). She filed the Amended Complaint on February 21, 2020. See generally Am. Compl. Plaintiff moved for summary judgment on September 1, 2020. See generally Pl.'s Mot. Defendants, in turn, moved for summary judgment on October 30, 2020. See generally Defs.' Mot.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will

demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

### A. Failure to Comply with Local Rules

In her response to Defendants' Motion, Plaintiff urges the Court to deny the motion since it violates Local Rule 7.1(c). Dkt. No. 51 at 8–9. Defendants disagree that they violated Local Rule 7.1(c). Dkt. No. 54 at 1–3. The Court notes that it has broad discretion in determining whether to overlook a party's failure to comply with local court rules. Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (citing Wright v. BankAmerica Corp., 219 F.3d 79, 85 (2d Cir. 2000)). Any deviation from the Local Rules will bring about a just result "within the spirit of Rule 1 of the Federal Rules of Civil Procedure." Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1049 (2d Cir. 1991); see also Fed. R. Civ. P. 1 ("[The Federal Rules] should be construed,

administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Thus, without passing judgment on Defendants' compliance with the Local Rules, the Court will excuse any potential noncompliance and consider Defendants' Motion.

### B. First Amendment Retaliation

Plaintiff argues that her termination was in retaliation for speech protected by the U.S. and New York State constitutions. Dkt. No. 42-34 at 10–27. In addition to arguing that the individual defendants are not entitled to qualified immunity, Plaintiff asserts that the School District is subject to municipal liability under Monell v. Department of Social Services, 453 U.S. 658 (1978). Id. at 27–32. Defendants, in turn, contend that Plaintiff's claims fail because her speech related to her role as an aide/monitor. Dkt. No. 48-1 at 2–9. Also, Defendants assert that the individual Defendants are entitled to qualified immunity, and that the School District is not subject to municipal liability. Id. at 15–18.

The Court agrees that Plaintiff's claims fail; however, the Court grants Defendant's motion on the basis that Plaintiff's speech was not on a matter of public concern and therefore was not protected from retaliation by the First Amendment.

To survive a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must present evidence: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Myers v. Municipality of Greene Cty., No. 19-CV-325, 2020 WL 204296, at *5 (N.D.N.Y. Jan. 14, 2020) (Kahn, J.); see also Housing Works, Inc. v. Turner, 179 F. Supp. 2d 177, 199 n.25 (S.D.N.Y. 2001) (citation omitted) ("Free

speech claims under the First Amendment and the New York State Constitution are subject to the same standards."). A public employee's work-related speech is protected "when he or she is speaking 'as a citizen upon matters of public concern.'" Raymond v. City of New York, 317 F. Supp. 3d 746, 772 (S.D.N.Y. 2018) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). Speech "on a matter of public concern" "relat[es] to any matter of political, social, or other concern to the community." Nagle v. Marron, 663 F.3d 100, 106 (2d Cir. 2011) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). Speech that "principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection." Agosto v. New York City Dep't of Educ., 982 F.3d 86, 95 (2d Cir. 2020) (internal citation omitted). "[C]ourts must look behind pretextual 'public concern' rationales proffered by plaintiffs and attempt to discern whether their conduct, taken as a whole, was actually meant to address matters of public concern or was simply a vehicle for furthering private interests." Pappas v. Giuliani, 118 F. Supp. 2d 433, 444 (S.D.N.Y. 2000) (internal citation omitted). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999) (citations omitted). Still, the "the speaker's motive cannot be the only factor that we consider in deciding whether [Plaintiff's] statement is a matter of public concern." Reuland v. Hynes, 460 F.3d 409, 416 (2d Cir. 2006).

    Here, although Plaintiff argues that her speech addressed a matter of public concern, i.e., the safety of school children and staff, Dkt. No. 42-34 at 20–22, the content, form, and context of

8

Plaintiff's speech reveals that she principally cared about her son rather than the situation of the community in general.

### 1. Open House

First, at the open house, Plaintiff asked Conrow:

> "Do you know anybody by the name of [the student]?" . . . "I have a concern that my husband wanted me to ask. *Apparently the kid spent some time in jail and he could be dangerous, and I just want to check and make sure that he's not near my kids.*"

See Henderson Dep. at 21:24–22:5 (emphasis added).

After Conrow told her that he did not know the student, Conrow called over Warga. Id. at 22:9–13; 23:18–20. Warga also did not know the student, and then Conrow called over someone who turned out to be the student's aide. Id. at 24:13–20. Plaintiff explained her concerns to the aide, and he was able to satisfy some of her concerns. Id. at 24:13–25:19.

Plaintiff's inquiries about a student cannot fairly be characterized as constituting speech on a matter of public concern. The content of Plaintiff's inquires reveals that she did not want the student near her son. Further, the context of the inquiries supports the conclusion that it is not protected by the First Amendment. As Plaintiff admits, "[she] privately and discretely questioned several responsible High School employees at the high school during the Open House[.]" September 30 Letter at 2; compare Kimble v. Kingston City Sch. Dist., No. 18-CV-575, 2019 WL 1259614, at *5 (N.D.N.Y. Mar. 19, 2019) (finding speech to not be a matter of public concern due in part to, "other than filing a Notice of Claim,[p]laintiff made his complaints about the bullying of his son privately, *i.e.*, in the form of emails to or conversations with employees of Defendant District, rather than in a public forum.") with Thibault v. Spino, 431 F. Supp. 3d 1, 10

(D. Conn. 2019) ("Further, the context of the speech supports the conclusion that it is protected by the First Amendment. As Plaintiff notes, her speech was published on a forum maintained by a political candidate in the run-up to an election."). Finally, although not dispositive, Plaintiff's motivation was clearly to protect her son. See, e.g., September 30 Letter at 1 ("I feel that I was mistreated and wrongly accused pertaining to my right and my parental responsibility to protect my son."); id. ("This [information about the student] caused me to have a 'normal parental response' that made me fearful for the safety and well being of my son in attendance at the [H]igh School."); see also Kimble, 2019 WL 1259614, at *5 (finding that "although the issue of bullying in schools and elsewhere is certainly a matter of public interest," plaintiff's "complaints concerned *only* his son's mistreatment at the hands of other students, which Plaintiff asserts was the result of Plaintiff's role as a School Resource Officer." (emphasis in original)).

The Second Circuit has recognized that although an "individual motivated by a personal grievance can simultaneously speak on a matter affecting the public at large," speech that "principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection." Montero v. City of Yonkers, New York, 890 F.3d 386, 399–400 (2d Cir. 2018) (internal quotation marks, citation, and alteration omitted). Courts in this Circuit examine whether speech principally concerns personal issues or a matter affecting the public at large. See Ross v. New York City Dep't of Educ., 935 F. Supp. 2d 508, 525 (E.D.N.Y. 2013) ("Although Plaintiff's press conference may have 'exposed' allegedly improper conduct, this form of speech was primarily concerned with his *personal* dissatisfaction with adverse employment decisions and his *personal* lawsuit that sought

10

to only redress *personal* injuries.") (emphasis in original); see also Paterno v. City of New York, No. 17-CV-8278, 2018 WL 3632526, at *8 (S.D.N.Y. July 31, 2018), aff'd, 781 F. App'x 15 (2d Cir. 2019) ("Any tangential discussion of broader 'discriminatory conduct at DOT' unrelated to Plaintiff . . . was secondary to discussion of Plaintiff's involvement."). Here, even if Plaintiff had discussions and concerns about broader school safety at the School District, it was still secondary to Plaintiff's parental desire to protect her son. Therefore, taking into consideration the content, form, and context of Plaintiff's statements at the open house, Plaintiff's inquiries at the open house principally focused on her personal grievances—not on matters of public concern.

### 2. Parking Lot

Plaintiff's discussion with Mastrantuono in the parking lot was of the same category of speech as the open house since it centered around her inquiries into the student.[2] Thus, the inquiries to Mastrantuono in the parking lot also did not constitute speech on a matter of public concern and fail for similar reasons as described above.

Plaintiff's private statements indicating a desire to protect her child from a perceived threat do not invoke First Amendment protection. There is nothing in the record to indicate that Plaintiff intended to voice her discontent about the broader issue of school safety to the public at large. Furthermore, although the issue of school safety can certainly be a matter of public interest, Plaintiff's speech principally concerned her son's safety in potentially interacting with an allegedly dangerous student. The Court is cognizant that the present case deals with the public employment context, and parental speech outside this context is not subject to the Pickering

---

[2] Although Defendants assert that Plaintiff made inappropriate statements about the student, Defs.' SMF ¶ 92, the Court notes that even if Plaintiff made no derogatory statements, her First Amendment claims still fail.

public concern test. See generally C.T. v. Valley Stream Union Free Sch. Dist., 201 F. Supp. 3d 307, 316 (E.D.N.Y. 2016) (declining to apply Pickering public concern test to parents with children in public school).

Because none of Plaintiff's statements were on a matter of public concern, her § 1983 claim for First Amendment retaliation and New York State Constitution free speech retaliation claim both fail.[3] As a result, Plaintiff's municipal liability claim against the School District also fails. See Bradley v. City of New York, No. 08-CV-1106, 2009 WL 1703237, at *2 (E.D.N.Y. June 18, 2009) ("To hold a municipality liable under Section 1983, a plaintiff must establish both a violation of his or her constitutional rights and that the violation was caused by a municipal policy or custom.").

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's motion for summary judgment (Dkt. No. 42) is **DENIED**; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 48) is **GRANTED**; and it is further

**ORDERED**, that the Amended Complaint (Dkt. No. 29) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk is directed to close this action; and it is further

---

[3] Because the Court finds Plaintiff has not demonstrated a triable issue on all elements of her retaliation claim, it does not reach the issue of whether the individual defendants are entitled to qualified immunity.

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    May 14, 2021
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge